GEORGE A. BACHELDER *vs.* SAMUEL W. LOVELY.

Penobscot.   Opinion January 7, 1879.

*Promissory notes.   Consideration.   Deed.   Estoppel.   Lis pendens.*

Where one gives a warranty deed of land, and his title at the time of giving it is called in question and litigated, and a subsequent purchaser, who entertains doubts as to the force and effect of the covenants in his deed, voluntarily and without fraud enters into a contract by which he gives his note in contribution towards procuring a release from a litigating claimant, such note is for a valuable consideration.

The plaintiff and wife joined in a deed to B, with covenants of warranty of land, the description of which closed thus: "Intending to convey all the right, title and interest which the said L P (wife) derived as heir at law of her father." The land passed by subsequent intermediate deeds of warranty to the defendant, and from him to others. Before the plaintiff and wife gave their deed, R brought his bill in equity against them to recover the land, pending which, the plaintiff negotiated with R to purchase his claim, and the defendant, promising to contribute thereto, made his promissory note to plaintiff and deposited it with counsel to keep until the plaintiff should show to him a deed from R that would cure the defect which R's claim imposed upon the defendant's title, and then counsel was to deliver the note to the plaintiff. *Held*, that whatever might be the effect of the covenants in the deed of the plaintiff and his wife to B, the plaintiff's promise to remove the incumbrance imposed upon the defendant's title by R's claim, if performed, was a sufficient consideration for the notes. *Held*, also, that the giving of a quitclaim deed from R to plaintiff's wife was a performance of the condition upon which the notes were given, on the ground that the deed of plaintiff and wife to B, purported to convey an estate in fee and free from incumbrance, and therefore the plaintiff and his wife, with their grantees, would be estopped from setting up any claim under the deed from R. *Held*, further, that if this were not so, the deed of plaintiff and wife to defendant would make it so, the lateness of that deed being due to the fact that defendant did not make his objection to the first one, on the ground of its insufficiency, and to allow him now to make the objection would be a fraud upon the plaintiff.

ON REPORT.

ASSUMPSIT upon two promissory notes from the defendant to the plaintiff, dated November 29, 1875, for $50, on six months, and for $100, on nine months therefrom, given under the following circumstances:

The wife of the plaintiff is the daughter of Samuel Pratt,

deceased; in the division of whose estate certain landed premises in Oldtown were set off to her. She and her husband, the plaintiff, deeded the premises to James D. Burnham, by deed of warranty dated June 27, 1870, which deed, in full, is a part of this case, inasmuch as a question of construction arises upon it. Afterwards, on June 27, 1870, Burnham, by deed of warranty, conveyed to his wife. On June 14, 1871, Mrs. Burnham, by warranty deed, conveyed to Wm. M. Bean. On December 9, 1872, Bean, by deed of quitclaim, conveyed a divided portion of the premises to the defendant, retaining title to the remainder in himself. All the deeds were recorded.

Before the conveyance by the Bachelders to Burnham, a bill in equity had been instituted for the possession and title of the property by one Amos Rines, and a result was reached, stated in *Rines* v. *Bachelder*, 62 Maine, 95; the decision in which case and the facts therein recited were made a part of the present case.

After the decision in that case was announced, the plaintiff was engaged in negotiating for purchasing in the claim of Rines, in order to quiet the title of all concerned. While doing so he urged the defendant (as well as Bean,) to contribute something towards the amount necessary to be paid for that purpose and to defray the expense of that litigation. Question was made whether the deed to Burnham was or was not a warranty deed, on account of the closing words of the description of the premises, (as stated in the head-note). The defendant consulted counsel, who gave his opinion that it was doubtful how the deed should be construed. After the conveyance to Burnham, he and Bean, and the defendant, made improvements on the land.

Finally the defendant and plaintiff went to the office of George T. Sewall, where the notes in suit were made, and left with Sewall to keep until the plaintiff should show to him a deed from Rines and wife that would cure the defect which Rines' claim to the premises imposed upon the defendant's title, and then to deliver over to the plaintiff.

About ten days thereafter, and before any deed was shown to Sewall, the defendant demanded his notes of Sewall, claiming to rescind the arrangement, and forbade his delivering them to the plaintiff.

On the same day that the notes were given, but afterwards, the plaintiff got the delivery to himself of a quitclaim deed from Rines and wife, running to the plaintiff's wife, and covering the premises conveyed to Burnham, relieving his land from Rines' claim of title, and the very next day the deed was recorded, and the defendant was then, or soon after, notified of the fact. In about one month afterward, the same deed was exhibited to Sewall and a delivery of the notes demanded by the plaintiff.

Before this suit was commenced, the plaintiff tendered defendant, and left with Sewall for the defendant, his and his wife's quitclaim deed of the premises, dated December 7, 1876, (the writ in this case being dated February 16, 1877) and again demanded the notes of Sewall.

Sewall refused to deliver the notes to either party, produced them at the hearing, and left them in the care of the court.

The defendant was never disturbed or molested by any person in the possession of the premises, but has been in quiet and peaceful possession since the conveyance to him. The plaintiff purchased the Rines' claim, by giving his own notes therefor with an indorser. Another heir, and also the widow of Samuel Pratt, contributed something toward the sum paid.

The defense set up was that the defendant had been induced to give his notes upon a false representation by the plaintiff, and that Bean had also contributed to the same end. But the proof failed as to that. The statement was rather an expectation, than a deliberate assertion of facts, and the plaintiff was unreasonably disappointed by Bean, in that regard.

Upon the foregoing findings the law court were to order such judgment as may be proper in the premises.

*A. W. Paine,* for the plaintiff.

*C. A. Bailey,* for the defendant, to the point that the deed was one of warranty, notwithstanding the intended clause of the description, cited *Pike* v. *Monroe,* 36 Maine, 309. *Hubbard* v. *Apthorp,* 3 Cush. 419. *Howell* v. *Slade,* 4 Mason, 410. *Cutler* v. *Tufts,* 3 Pick. 272. *Drew* v. *Drew,* 28 N. H. 489. *Bates* v. *Foster,* 59 Maine, 157.

To the point that the plaintiff being under legal obligation to cure the defect in Rines' claim, the notes given as an inducement for him to do it, were a mere gratuity, cited *Shadwell* v. *Shadwell*, 99 E. C. L. 159, 177. *Cobb* v. *Cowdery*, 40 Vt. 25. *Farrington* v. *Boulard*, 40 Barb. 572. *Tilden* v. *New York*, 56 Barb. 340.

To the point that the court will not compel the performance of an executory contract, entered into in ignorance of what the law requires, if the law would not otherwise impose the obligation, counsel cited *Warder* v. *Tucker*, 7 Mass. 449. *Rowe* v. *Whittier*, 21 Maine, 545.

The first deed presented did not fulfill the conditions, and the second, dated after the maturity of the notes, was too late.

DANFORTH, J. The defense to the notes in suit is an alleged want of consideration and non-delivery. They were placed in the hands of a third person to be delivered on the performance of a certain condition by the plaintiff.

It seems that the plaintiff's wife inherited from her father a certain parcel of land, which she with her husband conveyed, by a deed with covenants of warranty, to James D. Burnham; a portion of which, through several mesne conveyances, came to the defendant. Before these several deeds, one Amos Rines had instituted a bill in equity praying for a conveyance of the premises, on the ground that the land was held by Mrs. Bachelder's father by virtue of a trust resulting in his favor, he having paid the consideration therefor. The court held that said Rines was entitled to a decree upon certain conditions. As the several deeds, including that to the defendant, were given while Rines' bill was pending, a defect in defendant's title was the result. 62 Maine, 95.

These notes were given on condition that the plaintiff should show to Sewall, in whose hands the notes were placed, "a deed from Rines and his wife that would cure the defect which Rines' claim imposed upon the defendant's title."

It is now claimed that the plaintiff, by virtue of the covenants of warranty in his deed to Burnham, was bound to remove the incumbrance arising from Rines' claim, which was all he promised

to do, or did do, as the condition on which the notes were given, and that, therefore, they were without a consideration.

But in this connection it is not material to inquire into the extent of the obligation imposed upon the plaintiff by virtue of his covenants. A doubt as to their force and effect had arisen, and the defendant voluntarily, uninfluenced by any fraud, preferred to, and did, enter into the contract by virtue of which he gave his notes to procure a release of Rines' claim, rather than depend upon the covenants in his deed for that purpose. Certainly it was competent for him to make this election, and having made it, the condition to be performed was a good consideration for his promise. If the conditions were performed, he obtains all for his promise that he expected to, all he bargained for, and whether worth much or little, a good bargain or otherwise, is not now the question. That there was a defect in his title is not denied. To have that remedied is worth something, and, in the absence of fraud, his own judgment, confirmed by his promise, is conclusive as to the amount.

The suggestion in the argument that the notes were given by defendant in ignorance of his legal rights and therefore not binding, is not tenable. Knowing the uncertainties of the law, if he must still rely upon them it would indeed be hard. The very fact that he was ignorant of the law and uncertain as to his rights under the covenants might be a strong reason for his adopting the safer and probably the less expensive course, but surely there can be no ground for repudiating his notes, after his election has been made.

It is undoubtedly true, as held in *Warder* v. *Tucker*, 7 Mass. 449, cited by counsel, that an acknowledgment of an existing debt is not binding. In other words, a mere admission of a liability, where by law there is none, will not create one. In this case the question is whether the plaintiff by his promise created a debt, and not whether it may be used as proof of one previously existing. The case of *Rowe* v. *Whittier*, 21 Maine, 545, also cited by counsel, depended upon the application of the statute of frauds. Here no such question is raised.

It only remains to ascertain whether the plaintiff fulfilled his part of the contract.

It seems that on the same day the notes were given, the plaintiff procured from Rines and his wife, running to his wife, a quitclaim deed of the premises, which was recorded the next day, notice given to the defendant, and, in about one month afterward, the deed was exhibited to said Sewall and the notes demanded.

The sufficiency of this deed to relieve the land from Rines' claim is not denied, but it is claimed that it does n ot enure to the benefit of the defendant. If at all, it must undoubtedly be by way of estoppel, and not by way of title. Mrs. Bachelder obtained no title by virtue of her deed from Rines, for he had none. His interest was simply an equitable claim to a title. He had not under his process in equity even obtained a decree for a conveyance ; nor does the decision of the court show that he was entitled to one, except upon condition. 62 Maine, 95. That condition was to be ascertai ned upon the report of a master to be appointed. Whether he w ould choose, or be able to perform such as might be imposed, does not appear. His deed then, though in form a conveyance of the land, was in fact a discharge of his claim ; or, at most, an assignment of it. If Mrs. Bachelder obtained any rights whatever under it she could enforce them only in equity. But was she in a condition to do that ? She had jointly with her husband conveyed the land by a deed with covenants of warranty. Whether she was bound by these covenants to defend her grantee or his successors against this claim is not the question involved. It is whether she or her grantors can enforce the right obtained from Rines, if any, in equity.

Estoppels may be founded upon the deed itself, independent of any covenants which may be found in it. " When it has distinctly appeared in such conveyance, either by a recital, an admission, a covenant, or otherwise, that the parties actually intended to convey and receive, reciprocally, a certain estate, they have been held to be estopped from denying the operation of the deed according to this intent." Rawle on Covenants for title, 407. " The principle deducible from these au thorities seems to be that, whatever may be the form or nature of the conveyance used to pass real property, if the grantor sets forth on the face of the instrument, by way of recital or averment, that he is seized or

possessed of a particular estate in the premises, and which estate the deed purports to convey; or, what is the same thing, if the seizin or possession of a particular estate is affirmed in the deed, either in express terms or by necessary implication, the grantor and all persons in privity with him shall be estopped from ever afterwards denying that he was so seized and possessed at the time he made the conveyance. The estoppel works upon the estate and binds an after acquired title as between parties and privies." Nelson, J., in *Van Rensselaer* v. *Kearney*, 11 How. 297, 325.

The deed of the plaintiff and his wife conveyed to Burnham a specific parcel of land, closing the description in these words: " Intending to convey all the right, title and interest which the said Lucy Pratt derived as heir at law of said Samuel Pratt, deceased."

The " said Lucy " derived as heir at law full legal title to the land, and that title she conveyed to her grantee, with a declaration in the form of a covenant that it was free of all incumbrances. Taking the deed as a whole it distinctly appears " that the parties intended to convey and receive, reciprocally," a complete title to the land, an estate in fee, free from all incumbrances whatever. Hence, upon authority as well as principle, she, and certainly the plaintiff, would be estopped from denying that her deed did convey such an estate. In any event she acquired no right under the deed from Rines which could be enforced in law, and an attempt to establish it in equity must prove equally abortive. Her grantees or assignees must be also estopped, for they are privies and would also be bound by the notice given by the records.

An estoppel of this kind is equally available to the defendant, whatever may be his rights under the covenants as such, as to the immediate grantee, for it is founded upon the estate purporting to have been conveyed, and that estate the defendant has.

It is not necessary to settle the question raised in the argument, whether this estoppel would come to the defendant without his consent, for the case finds not only a consent but that the notes were given for the express purpose of removing that incumbrance from the title.

But the plaintiff does not stop here. Before this action was commenced he tendered to the defendant a deed from himself and wife which, it is conceded, was sufficient to remove all incumbrances caused by Rines' claim. But this deed was refused, and it is now contended that it was too late, the time for the payment of the notes having long before expired. This would probably have been a valid objection if nothing previously had been done by the plaintiff in fulfillment of his contract. He had, however, in season obtained the discharge of Rines, which had been put upon record and the defendant notified of it. This step seems to have been taken in good faith, and thus all the expenses necessary to remove the incumbrance had been incurred. After this, the defendant, claiming to rescind the arrangement, demanded his notes of Sewall and forbade his delivering them to the plaintiff. This attempted rescission coming at the time it did cannot be allowed to prevail, for if so, it would be a fraud upon the plaintiff. He had not only incurred all the expense necessary to perform his part of the obligation, but was evidently relying in good faith upon what he had done as sufficient. Hence, if the objection of the defendant was that the deed was insufficient, honesty would have required him to so state when the defect could be so easily supplied. Not having done so, it is really his own fault that the second deed came so late, and he cannot, therefore, avail himself of that fact. As no other objection is now suggested the plaintiff is entitled to judgment upon his notes according to their tenor.

*Judgment for plaintiff.*

APPLETON, C. J., WALTON, BARROWS, PETERS and LIBBEY, JJ., concurred.